**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MARK LOUIS SANDON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-188-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BUREAU OF PRISON, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Mark Louis Sandon, currently confined in the Pekin Federal Correctional Institution ("FCI-Pekin") in Pekin, Illinois, filed a *pro se* civil rights complaint under 28 U.S.C. § 1331, pursuant to the *Bivens* doctrine.  R. 2; *see Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The plaintiff's complaint names five defendants: (1) the Bureau of Prisons ("BOP"); (2) Newton Kendig, whom the plaintiff identifies as the Health Service Director in the BOP's Central Office; (3) Jeff Allen, whom the plaintiff identifies as the Chief Medical Director in the BOP's Central Office; (4) Mike Nelson, whom the plaintiff identifies as the Medical Director in the BOP's Central Office; and (5) C.L. Polland, whom the plaintiff identifies as the Clinical Director of the Health Services Department at the United States Penitentiary located in Florence, Colorado ("USP-Florence").  The plaintiff alleges that the defendants failed to provide him with the proper medical treatment for his medical condition (Hepatitis-C), in violation of his rights under the Eighth Amendment of the United States Constitution.  Sandon seeks various forms of relief: (1) unspecified compensatory and punitive

damages; (2) trial by jury; (3) injunctive relief in the form of an Order directing the BOP to provide

him with the antiviral drug regime; (4) a declaratory judgment finding that the defendants' actions

violated his Eighth Amendment rights; (5) court costs; and (6) attorney's fees.  In addition to his

complaint, Sandon has filed a "Motion for Preliminary Injunction and/or Temporary Restraining

Order," R. 4, as well as a "Motion to Proceed *In Forma Pauperis,*" R. 3, which the Court will

address by separate Order.

### Initial Screening

This matter is before the Court for initial screening.  *See* 28 U.S.C. §§ 1915(e) & 1915A.

Under the screening process prescribed by §§ 1915(e) & 1915A, this Court must dismiss any claims

that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek

monetary relief from defendants who are immune to such relief.  *Id*.  Because this is a *pro se*

complaint, it is held to less stringent standards than those drafted by attorneys.  *See Wagenknect v.*

*United States*, 533 F.3d 412, 415 (6th Cir. 2008) (quoting *Malone v. Colyer*, 710 F.2d 258, 260 (6th

Cir. 1983)).  Moreover, at the screening phase, the allegations in a *pro se* complaint must be taken

as true and construed in favor of the plaintiff.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007)

(quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

### Sandon's Allegations

Sandon alleges as follows:

Sandon suffers from a chronic viral condition known as Hepatitis-C, which adversely affects

the liver.  He was first diagnosed with the condition on January 13, 2004, while confined in the

United States Penitentiary located in Leavenworth, Kansas ("USP-Leavenworth").  R. 2 at 2.  In

2004 and 2005, Dr. Tharp and Dr. McCollum, physicians at USP-Leavenworth, submitted a request

to the BOP seeking authorization to provide Sandon with a drug regimen consisting of Ribaviron/PEG Interferon as treatment for his chronic liver condition. *Id*. at 3.

On September 26, 2005, Dr. Tharp noted in Sandon's medical chart that Sandon met all of the criteria for the Ribaviron/PEG Inteferon therapy. Dr. Tharp's notes further concluded that Sandon should start the therapy as soon as possible, pending approval from the BOP Central Office. *Id*. According to Sandon, he was neither provided with this treatment, nor given any explanation as to why he was not provided with the treatment. *Id*.

In September of 2005, the BOP transferred Sandon to USP-Florence. *Id*. When he arrived at USP-Florence, Dr. C.L. Polland performed an initial screening of Sandon at intake. Sandon told Dr. Polland of Dr. Tharp's prior request for permission to administer the Ribaviron/PEG Interferon therapy, and Dr. Polland allegedly replied, "I don't have the time, staff or inclination to provide you with treatment." *Id*. at 3-4.

On April 25, 2007, the BOP transferred Sandon from USP-Florence to USP-Big Sandy. *Id*. On May 9, 2007, Dr. Richard Ramirez, the Regional Director for the BOP Mid-Atlantic area, made a note in Sandon's file instructing Dr. Cruz to submit a request to the BOP Central Office to provide Sandon with the Ribaviron/PEG Interferon therapy. *Id*. In April of 2008, Dr. Cruz allegedly informed Sandon that although he satisfied all of the criteria for drug therapy, the Central Office had not responded to Dr. Cruz's various requests. *Id*.

On March 25, 2008, according to Sandon, Defendants Kendig, Allen and Nelson denied Dr. Cruz's request to administer the anti-viral drug therapy. *Id*. at 4-5. Sandon did not attach that denial to his complaint, referring to it instead only as "Administrative Remedy Response No. 466049-A2." Sandon claims BOP's denial stated that "the 2004 liver biopsy performed revealed probably cirrhosis"

3

and that "a contraindication listed for treatment with Interferon and Ribaviron is cirrhosis." *Id*. at 5.

Sandon further claims that after the Central Office allegedly denied his request for an administrative remedy in March of 2008, another physician, Dr. Norbert Rosario,  examined him in June of 2008 and found that he needed the Hepatitis-C regimen.  *Id*.  According to Sandon, Dr. Rosario could not locate any record of the denial allegedly issued by the BOP Central Office in March of 2008.

Sandon asserts that the BOP's Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis dictate that inmates who have damage to the liver (cirrhosis) should either be referred for a liver biopsy or treated empirically with anti-viral therapy in consultation with a specialist.  *Id*. at 5-6.  Sandon disagrees with the BOP's conclusion that his cirrhosis is so severe (or de-compensated) that the anti-viral drug therapy is contraindicated.  *Id*. at 6.  Sandon alleges that the BOP's failure to provide him with the requested drug therapy will soon, however, cause his cirrhosis to become de-compensated or deteriorated.  *Id*.

Sandon further asserts that the defendants' refusal to provide him with the anti-viral drug therapy constitutes deliberate indifference to his serious medical needs.  He argues that this is the case specifically in light of the fact that several BOP doctors in different prisons have recommended that he undergo the anti-viral drug therapy.  *Id*.  Sandon complains that none of the defendants involved in denying his requests for the anti-viral drug therapy had physically examined him.[1]

_____

[1]Sandon did allege, however, that one of the defendants herein, Dr. C. L. Polland, performed an intake examination of him in September of 2005, when he was transferred to USP-Florence.

4

## I.

### A. Claim For Damages Against the BOP

The doctrine of sovereign immunity precludes the plaintiff's attempt to recover damages from the BOP. Federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Because the principle of sovereign immunity applies equally to agencies of the United States, agencies are also immune from suit in the absence of a waiver of sovereign immunity. *See Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) (citing *United States v. Testan*, 424 U.S. 392 (1976)). Therefore, the BOP, as a federal agency, cannot be sued since Congress has not waived sovereign immunity for constitutional torts. Accordingly, the plaintiff's claim for damages against the BOP is dismissed with prejudice because it fails to state a claim upon which relief can be granted.

### B. Official-Capacity *Bivens* Claims

The plaintiff has not stated the capacity in which he is suing any of the defendants. However, to the extent that he has asserted *Bivens* claims against the individual defendants in their official capacities, these allegations also fail to state a claim upon which relief can be granted because "a *Bivens* claim may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991). As a result, any claims for damages against the defendants in their official capacities are dismissed with prejudice.

5

**C. Individual-Capacity *Bivens* Claims Against Defendants Kendig, Allen, Nelson, and Polland**

At the § 1915A and § 1915(e) screening phase, it is this Court's duty to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. Taking the plaintiff's allegations as true, these screening criteria do not provide a basis for dismissing any of the plaintiff's individual-capacity claims. At this juncture, it cannot be said that the plaintiff's claims are frivolous, malicious, or fail to state a claim upon which relief may be granted. Additionally, assuming the truth of the plaintiff's allegations, the individual defendants are not entitled to qualified immunity because it is clearly established that a prisoner's constitutional rights are violated when government officials wrongly deprive the prisoner of medical care. *See DeShaney v. Winnebago Couty Dept. of Soc. Servs.*, 489 U.S. 189, 200 (1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982)). Therefore, none of the plaintiff's individual-capacity claims will be dismissed at this time.

As an aside, the Court notes that venue appears to be improper with respect to Defendant Polland. Because it does not appear that the defendants all reside in the same state, venue in this district cannot be premised on 28 U.S.C. § 1391(b)(1). Instead, venue is proper in Colorado under § 1391(b)(2) since all of the events giving rise to the plaintiff's claims against Polland occurred while the plaintiff was under Polland's care at USP-Florence, in Colorado. In contrast, none of the events or omissions giving rise to the plaintiff's claims against Polland occurred in Kentucky. Therefore, § 1391(b)(2) provides that the proper venue for the claims against Polland is in Colorado, not the Eastern District of Kentucky. However, because improper venue is not one of the screening criteria

listed in either § 1915A or § 1915(e), it would be improper for the Court to sua sponte dismiss or transfer the claims against Polland on this ground. Accordingly, this Court will either dismiss the claims against Polland, or if it be in the interest of justice, transfer the claims to the appropriate venue upon motion by either party. *See* 28 U.S.C. § 1406(a).

### D. Injunctive Relief

The plaintiff seeks both permanent and preliminary injunctive to force the BOP to provide him with the requested medical care. In his motion for preliminary injunctive relief, Sandon states that the prison where he is now confined, FCI-Pekin, is not equipped to address his medical needs, and he further alleges that the physician at FCI-Pekin has asked him why prior requests were not made to provide him with the proper medication. Sandon requests that this Court enter an injunction, or an emergency Order, requiring the defendants to provide him with the drug therapy. He states that he will suffer irreparable physical harm if he is not provided with the anti-viral therapy, and he asks this Court to enter a preliminary injunction ordering the defendants to provide him with the necessary treatment.

Again, venue is problematic. Although not stated explicitly in the complaint, the plaintiff's claims for injunctive relief can only be asserted against the defendants in their official capacities. Therefore, venue must be analyzed under 28 U.S.C. § 1391(e), which provides that in civil actions against "an officer or employee of the United States or any agency thereof acting in his official capacity," venue is proper "in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) the plaintiff resides if no real property is involved in the action." It does not appear that any of the defendants

7

or the plaintiff reside in the Eastern District of Kentucky. Moreover, given that the alleged ongoing deprivation of medical care is occurring in Illinois due to the fact that the plaintiff is now incarcerated there, it is clear that a substantial part of the events or omissions giving rise to the claim for prospective injunctive relief are not occurring in Kentucky. Thus, venue is improper in this district.

Considering that "[a] preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies,'" *Am. Civil Liberties Union v. McCreary County, Kentucky*, 354 F.3d 438, 444 (6th Cir. 2003) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)), and that "[p]ermanent injunctive relief is an extraordinary remedy which should be granted only sparingly and only for compelling reasons," *Ghandi v. Police Dept. of Detroit*, 747 F.2d 338, 343 (6th Cir. 1984) (citing *Wong v. Nelson*, 549 F. Supp. 895, 896 (D. Colo. 1982)), it seems improper for a Court lacking venue to consider the preliminary claim when it will not consider the ultimate claim–the permanent injunction. Therefore, upon motion by either party, the claim for injunctive relief will be dismissed, or if it be in the interest of justice, transferred to the appropriate venue. *See* 28 U.S.C. § 1406(a). In the interim, however, the motion for a temporary injunction is denied without prejudice.

## II.

Accordingly, **IT IS ORDERED** as follows:

(1)     The plaintiff's *Bivens* claims for damages against the BOP are **DISMISSED WITH PREJUDICE**.

(2)     The plaintiff's official-capacity *Bivens* claims against (1) Newton Kendig, (2) Jeff Allen, (3) Mike Nelson, and (4) C.L. Polland are **DISMISSED WITH**

**PREJUDICE**.

(3)    The plaintiff's motion for preliminary injuctive relief is **DENIED WITHOUT PREJUDICE**, and this claim, as well as his other claims for injunctive relief, shall be dismissed, or if it be in the interest of justice, transferred to the appropriate venue upon motion by either party.

(4)    As for the *Bivens* individual-capacity claims, the Pikeville Clerk's Office shall prepare the documents necessary for service of process upon the following defendants:

    a.    Newton Kendig, whom the plaintiff identifies as the Health Service Medical Director in the BOP's Central Office;

    b.    Jeff Allen, whom the plaintiff identifies as the Chief Medical Director in the BOP's Central Office;

    c.    Mike Nelson, whom the plaintiff identifies as the Medical Director in the BOP's Central Office;

    d.    C.L. Polland, whom the plaintiff identifies as the Clinical Director of the Health Services Department at USP-Florence.

(5)    For each identified defendant, the Clerk shall prepare the necessary number of "Service Packets" consisting of the following documents:

    a.    Completed summons form;

    b.    Complaint [Record No. 2];

    c.    Motion for Preliminary Injunction [Record No. 4];

    d.    This Memorandum Opinion and Order; and

    e.    Completed USM Form 285.

9

If the Clerk is unable to accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

(6)     For each identified defendant, the Clerk shall prepare three (3) Service Packets to be provided to the United States Marshal's Office in Lexington, Kentucky, addressed as follows:

      a.      to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

      b.      to the Office of the Attorney General of the United States in Washington, D.C.; and

      c.      for personal service at the BOP Central office in Washington, D.C.

(7)     The Pikeville Clerk shall send the required Service Packets for each identified defendant by certified mail to the United States Marshal's Office in Lexington, Kentucky. The Clerk shall enter the certified mail receipt into the record and note in the docket the date that the Service Packet was delivered to the United States Marshal's Office.

(8)     The United States Marshal's Office shall serve each of the identified defendants by:

      a.      Sending a Service Packet for each identified defendant by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

      b.      Sending a Service Packet for each identified defendant by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.; and

c.    Personally serving a Service Packet, through arrangement with the BOP, upon Defendant Polland at USP-Florence, and upon Defendants Kendig, Allen, and Nelson at the BOP Central Office. The United States Marshal's Office is responsible for ensuring that each defendant is successfully served with process. In the event that an attempt at service upon a defendant is unsuccessful, the United States Marshal's Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(9)    Within 40 days of the date of entry of this Order, the United States Marshal's Office shall send a Service Report to the Pikeville Clerk's Office, which the Deputy Clerk shall file in the record, and which shall state whether service has been accomplished with respect to each identified defendant.

a.    For each defendant to be served by certified mail, the Service Report shall include:

1.    a copy of the green card showing proof of service; or

2.    a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

b.    For each defendant to be personally served, the Service Report shall indicate:

1.    that the defendant was successfully served personally, or

2.    a statement explaining what efforts are being taken to locate the defendant and accomplish personal service.

11

(10)    The plaintiff shall immediately advise the Pikeville Clerk's Office of any change in his current mailing address.  **Failure to do so may result in dismissal of this case**.

(11)    The plaintiff must communicate with the Court solely through notices or motions filed with the Pikeville Clerk's Office.  **The Court will disregard correspondence sent directly to the judge's chambers.**

(12)    For every further pleading or other document he wishes to submit to the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk, or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.**

This 1st Day of October, 2008.

Signed By:

*Amul R. Thapar*   AT

**United States District Judge**